AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

An iPhone seized from Jerome Jay ISHAM's vehicle pursuant to a federal search warrant, currently in the custody of DEA Bellingham

Case No. MJ18-386

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
An iPhone seized from Jerome Jay ISHAM's vehicle pursuant to a federal search warrant, currently in the custody of DEA Bellingham

located in the ____Western____ District of ____Washington____, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B for list of items to be seized.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Distribution with Intent to distribute controlled substances; |
| 21 U.S.C. § 843(b) | Conspiracy to Distribute Controlled Substances; |
| | Use of Communications Facility to Commit, Facilitate or Further Drug Trafficking |

The application is based on these facts:
See affidavit of Special Agent Joseph Cheng.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA Special Agent Joseph Cheng
*Printed name and title*

Sworn to before me pursuant to CrimRule 4.1.

Date: 8/23/2018

*Judge's signature*

City and state: Bellingham, Washington

U.S. Magistrate Judge Paula L. McCandlis
*Printed name and title*

## Attachment A

### Items to be Searched:

**Target Telephone:** An iPhone seized from Jerome Jay ISHAM's vehicle pursuant to a federal search warrant. The Target Telephone is currently contained in a DEA evidence bag marked as exhibit N-55 and stored at the DEA Bellingham Residence Office.

## Attachment B

## Items to be Searched for and Seized:

This warrant authorizes the search for the following items in Target Device:

Evidence, fruits, and/or instrumentalities of the commission of the following crimes: Distribution of, and possession with intent to distribute, controlled substances, in violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841 and 846; use of a communications facility in furtherance of a felony drug offense, in violation of 21 U.S.C. § 843(b); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c), specifically:

a. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b. Stored list of recent received, sent, and missed calls;

c. Stored contact information;

d. Stored photographs of narcotics, cash or cash equivalents, firearms or other weapons, or related to the aforementioned crimes of investigation, or photographs that may show the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs; and

e. Stored text messages related to narcotics, cash or cash equivalents, firearms, or other activity related to the aforementioned crimes of investigation, including Apple iMessages, Blackberry Messenger messages, or other similar messaging services where the data is stored on the telephone.

# Affidavit

STATE OF WASHINGTON      )
                         )  ss
COUNTY OF WHATCOM        )

I, Joseph Cheng, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been so employed since August 2006. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I am currently assigned to the Bellingham Resident Office of the DEA's Seattle Field Division. My current assignment involves investigations of high-level drug trafficking organizations within the Western Washington area and elsewhere.

3. I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking. I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of the distribution of cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, heroin, marijuana, and other dangerous drugs.

4. I have interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and

Affidavit of SA Cheng - 1
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

users. I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, internet, pagers, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and mislead law enforcement investigations. I have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. I have examined narcotics customers' supplier lists, pay/owe ledgers maintained by traffickers, and other documentation related to narcotics trafficking. I have also examined documentation of various methods by which methamphetamine, cocaine, marijuana, heroin, and other illicit drugs are smuggled, transported, and distributed. I have participated in hundreds of hours of surveillance of narcotics traffickers. During surveillance, I have personally observed narcotics transactions, counter surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings.

5. I have also participated in investigations that involved the interception of wire communications, including four investigations of large-scale drug trafficking organizations in which I was the case agent and each of which resulted in the conviction of approximately 20 individuals on federal drug-related charges. In addition to these cases, I have participated in numerous other wiretap investigations in a variety of roles, including by conducting physical surveillance and monitoring intercepted communications. I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance or by targets' statements. Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers.

Affidavit of SA Cheng - 2
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6. The facts in this affidavit come from my training, experience, and information obtained from other agents and witnesses. I have not included every fact known concerning this investigation. I have set forth the facts that I believe are necessary for a fair determination of probable cause for the requested affidavit.

## II. PURPOSE OF AFFIDAVIT

7. I make this affidavit in support of an application for a warrant authorizing the search of the following telephone, which is further described below and in Attachment A (attached hereto and incorporated by reference as if fully set forth herein), for evidence, fruits and instrumentalities, as further described in Attachments B (attached hereto and incorporated by reference as if fully set forth herein), of the crimes of Distribution of, and Possession with Intent to Distribute, Controlled Substances, in violation of 21 U.S.C. § 841(a)(1); Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and Use of Communications Facility to Commit, Facilitate or Further Drug Trafficking, in violation of 21 U.S.C. § 843(b), as described herein:

   a. **Target Telephone:** An iPhone seized from Jerome Jay ISHAM's vehicle pursuant to a federal search warrant. The Target Telephone is currently contained in a DEA evidence bag marked as exhibit N-55 and stored at the DEA Bellingham Residence Office.

## III. SOURCES OF INFORMATION

8. I have obtained the facts set forth in this affidavit from oral and written reports of other law enforcement officers, from records, documents and other evidence obtained during this investigation, and from a confidential source. I have reviewed official reports prepared by other law enforcement officers participating in this investigation and in the other related investigations by agencies referenced in this affidavit.

9. When this affidavit refers to vehicle ownership, either I or other agents involved in the investigation have reviewed the relevant state vehicle records from the

Affidavit of SA Cheng - 3
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington State Department of Licensing ("DOL"), or the equivalent agency in other states. Similarly, when I refer to identification documents, either I or other agents involved in the investigation have reviewed the relevant driver license or similar records maintained by DOL or the equivalent agencies in other states. When I refer to the criminal history of a subject, either I or other agents involved in the investigation have reviewed the available criminal history from state or federal agencies. When I refer to telephone subscription records, either I or other agents involved in the investigation have reviewed the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers familiar with this investigation. When I refer to telephone toll records, either I or other agents involved in the investigation have received the information from the telephone company pursuant to an administrative subpoena or court authorized pen register/trap and trace device.

## IV. SUMARY OF INVESTIGATION

10.     In July 2018, a Whatcom County Drug and Gang Task Force (WDGTF) confidential source (hereinafter "CS") provided information that a group of individuals was involved in trafficking of counterfeit Percocet pills manufactured with fentanyl.

11.     In June 2017, the CS began his/her cooperation with the (WDGTF) for judicial consideration regarding pending Washington State drug charges. The CS is not currently an active confidential source with any other agencies. According to NCIC, the CS has federal drug trafficking convictions in 2006 and 2012. Additionally, the CS has prior Washington state convictions for residential burglary, taking a motor vehicle without permission, driving under the influence and theft. During this period of cooperation, the CS has provided information that has led to the seizure of a large scale marijuana grow. The CS has previously cooperated with the WDGTF and the DEA in Bellingham, Washington. During that period of cooperation, the CS provided information that led to a significant cross border (United States and Canada) drug smuggling investigation. On July 30, 2018, after providing the information set out in the

Affidavit of SA Cheng - 4
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

attached affidavit, the CS was arrested after law enforcement officers found cocaine, heroin, a digital scale and blue pills with M30 printed on them in a vehicle, which the CS had fled from when he was law enforcement following him. The CS was arrested, booked into Whatcom County jail and subsequently released. The CS is currently facing Washington State drug charges for possession of intent to distribute in regards to the drugs found in the CS's vehicle. Based upon this arrest and the seizures, the CS has now been terminated as a confidential source.

12. On July 27, 2018, based upon information provided by the CS, and law enforcement surveillance, a traffic stop was conducted on a vehicle driven by Griffin THOMPSON in Arlington, Washington. Investigators searched the vehicle pursuant to the vehicle exception and located approximately 3,000 pills marked "M30." Investigators had observed THOMPSON stop briefly earlier that evening at the residence of Bradley WOOLARD, 9717 99th Avenue Northeast, Arlington, Washington.

13. Investigators obtained a federal search warrant for the residence of Bradley WOOLARD, 9717 99th Avenue Northeast, Arlington, Washington. On July 28, 2018, investigators searched WOOLARD's residence. During that search, investigators seized approximately $400,000 and approximately 10,000 pills of counterfeit Percocet pills. The pills located in the office were consistent with the appearance of the pills seized from THOMPSON on July 27, 2018. Three of these pills were provided to the 10th Civil Support Team, Department of Defense, to test in their certified laboratory. The pills tested positive for the presence of fentanyl.

14. During the search of WOOLARD's residence, investigators recovered two shipping labels from the trash. One shipping label had the sender and recipient removed but described the contents as "Lab supplies" with a weight of 0.1 kilograms, a value of $5.00 and goods origin on CN. A second shipping label was largely intact and also listed the contents as "Lab supplies" with the same weight, value and goods origin, with the "from" information listed as "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502 Room GulouQu, Nanjing Jiangsu 210000."

Affidavit of SA Cheng - 5
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. Investigators identified two additional parcels that were en route to Western Washington from the same shipper as listed on packaging materials found in WOOLARD's residence. Both parcels were intercepted. On August 2, 2018, investigators obtained federal search warrants for the two additional parcels, one of which was addressed to Sadie BATES at 12118 Hwy 99 #J 402, Everett, Washington.

16. The parcels were searched pursuant to the warrant. Inspector Myhrer used the TruNarc Handheld Narcotics Analyzer on the contents of the packages. Each package, including the package addressed to BATES, yielded a presumptive positive result for fentanyl. A TruNarc Handheld Narcotics Analyzer uses Raman spectroscopy to identify narcotics, stimulants, depressants, hallucinogens and analgesics.

17. On August 3, 2018, U.S. Magistrate Judge Christel issued anticipatory search warrants, including a warrant for 12118 Hwy 99 #J 402, Everett, Washington, contingent upon the delivery of the parcel to that location.

### V. PROBABLE CAUSE

18. Prior to attempting delivery of the parcel to BATES at 12118 Hwy 99 #J 402, Everett, Washington, investigators removed the contents of the parcel, replacing them with "sham" or a substance made to resemble the original contents.

19. On August 3, 2018, a controlled delivery was conducted of the parcel addressed to Sadie BATES at 12118 Hwy 99 #J 402, Everett, Washington. According to NCIC, BATES has no prior convictions and has a 2017 arrest for assault 4, domestic violence.

20. On August 3, 2018 at approximately 11:45 a.m., an investigator posing as a US Postal Service mail carrier knocked on the door of 12118 Hwy 99 #J 402, Everett, Washington. BATES opened the door, identified herself as Sadie BATES, accepted the parcel and took it into the residence. Shortly thereafter investigators knocked and announced the presence of law enforcement with a search warrant at BATES's door. BATES opened the door for investigators and was taken into custody. Investigators secured the residence pursuant to the anticipatory search warrant.

Affidavit of SA Cheng - 6
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21. Investigators read BATES her Miranda rights and BATES agreed to talk to investigators. BATES pointed out the location of the parcel and indicated that she did not know the contents of the parcel. BATES stated that she was receiving the parcel for "JJ," subsequently identified via his Washington driver's license as Jerome ISHAM. BATES stated that she had previously received one parcel for ISHAM. BATES stated that she had recently lost her job and that in exchange for accepting packages for ISHAM, ISHAM was paying BATES's rent. BATES stated that she has known ISHAM for approximately 10 years and that their children play together frequently. BATES stated that she had been to ISHAM's residence of numerous occasions and identified it as a duplex near the intersection of Broadway and Madison Street in Everett, Washington.

22. Investigators reviewed text messages on BATES's phone which showed that prior to the arrival of investigators, BATES had sent a text message to "JJ" which said "package is here." BATES's phone had (425) 322-9283 as the telephone number for the contact named "JJ." BATES allowed investigators to send text messages, using BATES's phone, to "JJ", posing to be BATES, to coordinate "JJ" coming to pick up the package. The following is the text message exchange:

"JJ": "ok u hm"

Investigators: "Yes"

"JJ": "Ok can I come now"

Investigators: "yeah" and "where ya at"

"JJ": "On freeway," "I'm like 6-8 mins away I'm smashing," and "is that ok?

Investigators: "ya"

"JJ": "Sorry had to get my kid in the car" and "you got ur kid"

Investigators: "ya"

"JJ": "ok" and "Ru ok"

Investigators: "ya. BD stressin me out"

"JJ": "U need me to run up"

Affidavit of SA Cheng - 7
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Investigators: "ya"

23. At approximately 12:26 p.m., investigators observed Jerome Jay ISHAM arrive at BATES's residence. Investigators observed that ISHAM arrived in a gray Chevy SUV, bearing Washington license plate BFN4158, which is registered to Jerome ISHAM at 2210 Howard Ave Unit A, Everett, Washington. ISHAM was taken into custody without incident upon his arrival at the door to BATES's apartment. ISHAM was positively identified via his Washington driver's license. Based on ISHAM showing up at BATES's apartment at a time that is consistent with the text messages, investigators believe "JJ" to be Jerome Jay ISHAM. At the time of ISHAM's arrest, investigators removed ISHAM's personal property, which included ISHAM's wallet and cell phone (**Target Telephone**), from ISHAM's person and placed them into ISHAM's vehicle. ISHAM was booking into Snohomish County Jail and ISHAM's vehicle was impounded.

24. According to NCIC, ISHAM has prior drug convictions in Washington State in 1999, 2000, 2003, 2010 and 2012 and convictions for firearms offenses in 2003 and 2010.

25. On August 3, 2018, Magistrate Judge Brian A. Tsuchida signed a search warrant for ISHAM's residence and ISHAM's vehicle. On the same date, investigators executed these search warrants.

26. Investigators recovered multiple documents that indicated that ISHAM resided at the residence. Investigators recovered a firearm from the under the bed in the master bedroom. A check on the serial number of the firearm indicated that it was stolen.

27. Investigators also found numerous small plastic baggies which contained small blue pills marked "M30." These pills were located in multiple locations in the master bedroom and near the floor of the kitchen. The pills that were found near the floor of the kitchen were in an area easily accessible by a child. A TruNarc Handheld Narcotics Analyzer examination of the pills yielded a presumptive positive result for an analogue of fentanyl. Based on a visual assessment, investigators believe there to be greater than 2000 pills found in ISHAM's residence.

Affidavit of SA Cheng - 8
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

28. Based on my training and experience, I believe that the way these pills were packaged is consistent with distribution of counterfeit "M30" pills that contain fentanyl.

29. During the court-authorized search of ISHAM's vehicle, investigators recovered a cell phone (**Target Telephone**), which had been previously located by law enforcement on ISHAM's person, and placed by law enforcement in the vehicle. Investigators called (425) 322-9283, which was the number that law enforcement had been texting with "JJ", and the **Target Telephone** rang.

## VI. KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

30. Drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

   a. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones

Affidavit of SA Cheng - 9
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

    b.    The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

    c.    Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

    d.    Drug traffickers increasingly use applications on smart phones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering. Evidence of the use of such applications can be obtained from smart phones, and is evidence of a smart phone user's efforts to avoid law enforcement detection.

    e.    Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and

Affidavit of SA Cheng - 10
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

   f. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

## VII. CONCLUSION

31. Based on the information set forth herein, there is probable cause to search the above described **Target Telephone**, as further described in Attachment A, for evidence, fruits and instrumentalities, as further described in Attachment B, of crimes committed by the individuals listed in this affidavit and their coconspirators, specifically of the crimes of Distribution of, and Possession with Intent to Distribute, Controlled Substances, in violation of 21 U.S.C. § 841(a)(1); Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and Use of Communications Facility to Commit, Facilitate or

//
//
//

Affidavit of SA Cheng - 11
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Further Drug Trafficking, in violation of 21 U.S.C. § 843(b).

JOSEPH CHENG
Special Agent
Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on 23rd day of August, 2018.

PAULA L. McCANDLIS
United States Magistrate Judge

Affidavit of SA Cheng - 12
USAO No. 2018R00972

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970